**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:25-CV-00712-KDB-MTO**

| | |
|---|---|
| **JON ALEXANDER KWAIGAYE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CITY OF CHARLOTTE,**<br><br>**Defendant.** | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Defendant City of Charlotte's Motion for Summary Judgment (Doc. No. 21) in this post-termination employment dispute. The Court has carefully considered the motion, and the parties' briefs and exhibits in support and opposition. For the reasons discussed below, the Court will **GRANT** the motion.

## I. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *United States v. 8.929 Acres of Land in Arlington Cnty., Virginia*, 36 F.4th 240, 252 (4th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)); *see United States, f/u/b Modern Mosaic, LTD v. Turner Construction Co., et al.*, 946 F.3d 201, 206 (4th Cir. 2019). A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *8.929 Acres of Land*, 36 F.4th at 252. "A fact is material if it might affect the outcome of the suit under the governing law." *Id.* (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions, or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (when the nonmoving party "has failed to make a sufficient showing on an essential element of [his] claim with respect to which [he] has the burden of proof," summary judgment is warranted); *United States ex rel. Gugenheim v. Meridian Senior Living, LLC*, 36 F.4th 173, 178 (4th Cir. 2022). If the movant satisfies his initial burden to demonstrate "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmovant to "present specific facts showing that there is a genuine issue for trial." *8.929 Acres of Land*, 36 F.4th at 252 (quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015)).

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021) (quoting *Anderson*, 477 U.S. at 247–48) (emphasis in original). Rather, the nonmoving party must establish that a material fact is genuinely disputed by, inter alia, "citing to particular parts of the materials of record" and cannot rely only on "conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Fed. R. Civ. P. 56(c)(1)(A); *8.929 Acres of Land*, 36 F.4th at 252 (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013)). And "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999); *see also Tankesley v. Vidal*, No. 1:21-CV-I448, 2023 WL 4273763, at *2 (E.D. Va. June 29, 2023) ("It is ... well-settled within the

Fourth Circuit that 'where a party submits an affidavit that is inconsistent with a witness's deposition testimony, the contradictory affidavit is disregarded for purposes of summary judgment.'").

Still, summary judgment is not intended to be a substitute for a trial of the facts. *Anderson*, 477 U.S. at 249. In determining if summary judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (citation modified). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). In the end, the relevant inquiry on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff Jon Alexander Kwaigaye began working for the Charlotte Area Transit System ("CATS") before 2010. He alleges that between July and October 2024, two colleagues began bullying him, including one who purportedly filed "multiple false complaints" accusing him of falsifying his timesheet to reflect overtime he didn't earn. Complaint ("Compl.") ¶¶ 6–8, 11. Kwaigaye further alleges that his colleagues' conduct included photographing and recording him without his consent, spreading rumors that he was engaged in an inappropriate relationship with his supervisor, and otherwise generally harassing him. *Id.* ¶¶ 9, 18, 23. Kwaigaye reported these incidents to his supervisor, who in turn elevated the concerns to the human resources ("HR")

department. *Id.* ¶ 9. According to Kwaigaye, HR took no action against his co-workers, instead retaliating against him by initiating an investigation into their allegations. *Id.* ¶¶ 10, 13–14.

CATS terminated Kwaigaye's employment in December 2024 and then allegedly communicated the stated reason for termination (time theft) to "the unemployment office" resulting in his being denied unemployment benefits. *Id.* ¶¶ 12–13, 15. He asserts that, despite possessing "badge swipe records and GFI data" that he believes demonstrate he worked overtime in accordance with CATS policies, HR relied on "incomplete and inaccurate audit data" to terminate him. *Id.* ¶ 13.

Kwaigaye filed a claim with the Equal Employment Opportunity Commission and after receiving a Right to Sue notice on June 27, 2025, Kwaigaye filed this action in September 2025. *See id.*; Doc. No. 1-1. He asserts claims for retaliation under Title VII, wrongful termination in violation of North Carolina public policy, and defamation. Following discovery, CATS moved for summary judgment. Kwaigaye filed a response in opposition, and the motion is now ripe for the Court's ruling.

## III. DISCUSSION

CATS has moved for summary judgment on all claims, arguing that Kwaigaye did not engage in protected activity, and has not shown that his termination was the result of retaliation for reporting his colleagues' bullying behaviors; that he was not terminated on any grounds that violate North Carolina public policy; and that it did not defame Kwaigaye because any statements that he was terminated for time theft were true. *See* Doc. No. 22.

### A. Retaliation

The Court will first consider Kwaigaye's retaliation claim. "Title VII 'prohibits an employer from retaliating against a worker for either participating in a Title VII proceeding or

opposing an employer's discriminatory practices.'" *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 411 (4th Cir. 2022) (quoting *Perkins v. Int'l Paper Co*., 936 F.3d 196, 213 (4th Cir. 2019)).

To assert a prima facie case of retaliation, Kwaigaye must establish that (1) he "engaged in a protected activity," (2) his employer "acted adversely" against him, and (3) "there was a causal connection between the protected activity and the asserted adverse action." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (citing *Holland v. Washington Homes, Inc.,* 487 F.3d 208, 218 (4th Cir. 2007)); *see also Laurent-Workman v. Wormuth*, 54 F.4th 201, 218 (4th Cir. 2022). A plaintiff may prove retaliation through "direct or indirect evidence," or through the *McDonnell Douglas* burden-shifting framework. *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 303 (4th Cir. 1998) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)). Under *McDonnell Douglas,* if a plaintiff offers "sufficient evidence to establish a prima facie case of retaliation" and a defendant "offers a non-discriminatory explanation" for the termination, the plaintiff "bears the burden of establishing that the employer's proffered explanation is pretext." *Yashenko v. Harrah's Casino,* 446 F.3d 541, 551 (4th Cir. 2006); *see also Waag v. Sotera Def. Sols., Inc.*, 857 F.3d 179, 191 (4th Cir. 2017)*; Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016).

Kwaigaye contends that CATS terminated him in retaliation for reporting his colleagues' "bullying" behaviors (which included reporting that he was engaging in time theft in the workplace) that created unsafe working conditions over a four-month period in 2024. However, "[m]aking general workplace complaints is not protected activity" under Title VII. *Albero v. City of Salisbury*, 422 F. Supp. 2d 549, 560 n.43 (D. Md. 2006). Nor is reporting workplace safety concerns. *Benson v. Polyhose Inc.*, No. 7:25-CV-1296-D, 2026 WL 848950, at *3 (E.D.N.C. Feb. 24, 2026), *report and recommendation adopted,* No. 7:25-CV-1296, 2026 WL 842729 (E.D.N.C.

Mar. 26, 2026). Because Kwaigaye has not alleged that he engaged in protected conduct when reporting that his colleagues bullied him,[1] his claim fails at step one of the retaliation analysis.

But even assuming that Kwaigaye had engaged in protected activity when he reported his colleagues, his claim likewise fails because he has not established a causal connection between those reports and his termination. Indeed, Kwaigaye concedes that he was terminated based on the substance of his colleagues' allegations, not for reporting their actions toward him. Compl. ¶ 16 ("In December 2024, Plaintiff was wrongfully terminated based solely on these false accusations.").

And even if Kwaigaye's allegations had reflected a sufficient causal connection, CATS has proffered evidence that the termination resulted from two independent processes (an internal audit with a one year look back period by one department and a separate investigation by HR), both of which concluded that Kwaigaye engaged in time theft and time manipulation to obtain pay he did not rightfully earn. *See* Doc. Nos. 22, 22-1, 22-2. Kwaigaye, in turn, offers no evidence beyond his own conclusory allegations to suggest that CATS's stated rationale was a pretext for retaliation. For all of these reasons, CATS is entitled to summary judgment on this claim.

**B. Wrongful Termination in Violation of Public Policy**

Next, Kwaigaye alleges that CATS terminated him in violation of North Carolina public policy. More specifically, he alleges that it is a violation of North Carolina public policy to terminate someone for reporting "safety issues and workplace harassment." Compl. ¶ 29.

---

[1] "Protected activity under Title VII includes complaints of discrimination based upon 'race, color, religion, sex or national origin.'" *Landino v. Sapp*, 520 F. App'x 195, 198 (4th Cir. 2013) (quoting *Balazs v. Liebenthal*, 32 F.3d 151, 159 (4th Cir. 1994)). Kwaigaye has not alleged that his colleagues bullied him for any Title VII protected reason.

In North Carolina, a claim for wrongful discharge in violation of public policy is a narrow exception to the general rule that an at-will employee can be fired for any reason or no reason. *Horne v. Cumberland Cnty. Hosp. Sys., Inc.*, 228 N.C. App. 142, 146 (2013) (citing *Garner v. Rentenbach Constructors Inc.,* 350 N.C. 567, 571 (1999)). The exception is "confined to the express statements within [the North Carolina] General Statutes or … Constitution." *Whiting v. Wolfson Casing Corp.,* 173 N.C. App. 218, 222 (2005) (citation omitted). Accordingly, "wrongful discharge claims must be pled with specificity." *Hopkins v. MWR Mgmt. Co.*, No. 15 CVS 697, 2015 WL 6829326, at *5 (N.C. Super. Nov. 5, 2015) (citing *Gillis v. Montgomery Cnty. Sheriff's Dep't,* 191 N.C. App. 377, 379 (2008)). In other words, a plaintiff is required to "allege specific conduct that violated a specific expression of North Carolina public policy." *Id.* (citing *Considine v. Compass Grp. USA, Inc.*, 145 N.C. App. 314, 321–22 (2001), *aff'd,* 354 N.C. 568 (2001)).

Under the North Carolina Equal Employment Practices Act ("NCEEPA"), it is the public policy of North Carolina to "safeguard the right and opportunity to seek and hold employment without discrimination or abridgement on account of 'race, religion, color, national origin, age, sex or handicap.'" *Edwards v. Strata Solar, LLC*, 302 N.C. App. 168, 172 (2025), *review denied,* 930 S.E.2d 257 (N.C. 2026), and *writ denied,* 930 S.E.2d 261 (N.C. 2026) (quoting N.C.G.S. § 143-422.2). The NCEEPA does not, however, "express a public policy concerning harassment, failure to promote or retaliation." *Ramos v. Carolina Motor Club, Inc.*, No. 317CV00212RJCDSC, 2018 WL 3040028, at *11 (W.D.N.C. June 19, 2018) (quoting *Chung v. BNR, Inc.*, 16 F. Supp. 2d 632, 634 (E.D.N.C. 1997)). Thus, courts repeatedly hold that the NCEEPA does not provide a public policy basis for wrongful termination based on retaliation.[2] *Id.*

[2] *See also Malik v. Amazon.com Prices, LLC*, No. 3:21-CV-627-MOC-DCK, 2024 WL 150763, at *8 (W.D.N.C. Jan. 12, 2024), *aff'd sub nom. Malik v. Amazon.com Servs., LLC*, No.

Because Kwaigaye alleges that his termination was the result of retaliation, a theory that does not constitute a recognized public policy basis for a wrongful termination claim under the NCEEPA, his claim fails as a matter of law. Accordingly, the Court will grant summary judgment on this claim.

### C. Defamation

Lastly, Kwaigaye alleges that CATS published "false" statements accusing him of time theft and improper conduct. Compl. ¶¶ 15, 24, 30–31.

"As a cause of action, defamation claims protect people from untrue statements that damage or degrade their reputations." *Bouvier v. Porter*, 386 N.C. 1, 10 (2024). To recover for defamation, a plaintiff must show that the defendant "caused injury to the plaintiff's reputation 'by making false, defamatory statements of or concerning the plaintiff, which are published to a third person.'" *King v. Chaffin*, 759 F. Supp. 3d 690, 695 (W.D.N.C. 2024) (quoting *Boyce & Isley v. Cooper*, 153 N.C. App. 25, 29, 568 S.E.2d 893 (2002)); *see also Bouvier,* 386 N.C. at 10. However, "[t]ruth is an absolute defense to an allegation of defamation." *Sunar v. Gray Local Media, Inc.*, No. 3:26-CV-00129-KDB-DCK, 2026 WL 1662783, at *4 (W.D.N.C. June 9, 2026) (quoting *Taube v. Hooper*, 270 N.C. App. 604, 612, 840 S.E.2d 313, 319 (2020)) (additional citation omitted).

Although Kwaigaye asserts that CATS's statements regarding his conduct are false, he offers limited evidence in support of that conclusion. His opposition relies solely on his own

24-1135, 2025 WL 2651300 (4th Cir. Sept. 16, 2025) (wrongful termination in violation of North Carolina public policy claim failed when plaintiff alleged her termination was retaliation for making complaints against colleagues); *Rumley v. City of Graham*, No. 1:24CV323, 2025 WL 448008, at *4 (M.D.N.C. Feb. 10, 2025) ("North Carolina does not recognize a claim for wrongful termination grounded in a retaliation theory under [the] NCEEPA."); *McLean v. Patten Cmtys., Inc.*, 332 F.3d 714, 719 (4th Cir. 2003) (finding no private right of action under North Carolina law for retaliation under the NCEEPA).

affidavit and the affidavit of his former supervisor—who is alleged to have assisted him in the time-theft scheme and who was also terminated—asserting that Kwaigaye followed longstanding on-call and callback practices, and that the absence of badge access records "does not necessarily establish that no … work was performed." Doc. No. 29-1 at 1; 29-2.

These assertions do not clearly contradict the investigation's findings or suggest that any statements CATS may have made about the reason for Kwaigaye's termination were false. The record reflects, among other things, that Kwaigaye received on-call pay for servicing ticket vending machines that he did not service during on-call hours and that he was paid for on-call hours he did not work. Doc. Nos. 22 at 7; 22-1 at 18; 22-2 at 5–8. More importantly, Kwaigaye's rebuttal to CATS's audit and HR investigation records is simply that the investigation could be considered incomplete. Doc. No. 29 at 4. Because Kwaigaye has not produced evidence from which a reasonable jury could find CATS's statements false, CATS is entitled to summary judgment on this claim.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motion for Summary Judgment (Doc. No. 21) is **GRANTED**; and
2. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: August 24, 2026

Kenneth D. Bell
United States District Judge